Nott, J.
_ _ n delivered the opinion or the Court.
This case comes before the Court, on a motion for a third new trial; and if the verdict is contrary to law, a new trial may be granted, notwithstanding there have been three successive verdicts, for the same party. It belongs to the Court to determine the law, and when it is settled, it is the duty of Juries to conform to it, and the Court may grant a new trial, toties quoties, until a correct verdict is found. The case comes up now, in the same shape as before, except in a single feature, which does not essentially change the legal character of the transaction. The facts, and the decision of the Court, on the legal ground, with their reasons, will appear in the opinions delivered on the former trial, and will not be repeated here. If the verdict was contrary to law before, it is equally so now; and if the Court intends to preserve consistency in its decisions, a new trial must again be granted. The proof that the single word “ paid,” or “ settled,” in the margin of the list of bills, was in the hand writing of the defendant, was somewhat more satisfactory on the last, than on the former trial; and if the plaintiff’s right to recover, depended alone *329 bn that fact, whatever might be my private opinion, I should consider the case settled by the verdict _ of the Jury. But proof of that fact was aavancing hut a little way towards establishing the plaintiff’s cause of action. This is an action of deceit. It was necessary, therefore, to prove that the defendant had told a falsehood: that he had done it with a view to commit a fraud: that it was intended as a fraud on this plaintiff, and that she had suffered by it; and it has grown into a legal axiom, if it was not always so, that “ fraud must be proved.” It cannot be presumed: now, what is the evidence, that the defendant has told a falsehood? A single isolated word, is garbled ° , ” from the voluminous correspondence of mer- . . i , • . , . chants, engaged m extensive commercial actions, which, at most, could only he a nucleus on which a doubt might possibly he formed, Suppose it to have been written by mistake— suppose it to he a mere memorandum, explained by a letter of advice accompanying it, and well understood by the person to whom it was addressed ; would it then be considered a falsehood? If we are to resort to presumptions, the law requires us to adopt that which is most favourable to the character of the party; hut here, as soon as a doubt is excited, the minds the Jury have been permitted to wander through the boundless fields of conjecture, for a motive as base, as the most heated imagination could conceive. The single word “ paid,” or “ settled,” * *330 ^oes no^ Per sei necessarily imply that the bill op * posite to which it was written, was actually paid, eyen •£ jj. ¿jj ^ would not necessarily follow 1 J it was intended as a fraud. It is not sufficient that it might possibly have been so intended; if must be proved. I am not authorized to presume it. Suppose it was written when it was expected to have been paid, and had been defeated by subsequent events — suppose it to have been written when he promised to pay, if it was permitted to run over — suppose it to have been countermanded by the person for whose benefit it was intended, would it then have been a fraud? I do not moan to say fraud was not intended, but I say there was no evidence from whence it could be inferred. But let us suppose a letter to have been produced, written to Edwin Gardner, in which the defendant had said in totidem verbis, that he had paid this bill; and proof had been given, that he intended at the time to impose a falsehood upon him. Edwin Gardner might have had an action against him, if he had sustained damage by it; but I can see no principle of law upon which the plaintiff can support one. The drawer was in Charleston, the drawee in London, and the payee in Scotland. The plaintiff happened to be the owner of the bill, but her name did not appear upon it. The defendant was in London, a perfect stranger to the transaction. He did not know, as far as we have any evidence, that any person in the United States had an interest *331 in it, nor did he know that such a person as this plaintiff existed. How then could it be intended to deceive her? It was a private correspondence between two merchants, never intended to have been seen by any other person. It has been used for the purpose of deceiving a third person, but'that cannot reflect the fraud back on the defendant; the consequences are too remote to embrace him.
A smgie i&jated word, in an_ poSc7/thoue|h It might raise a is not sufapifeu™cdu"t is sumption^ the character of the requires them to adopt that which is most favourable to the chavad party.
*331 The principle of law, on which this action is founded, is laid down in the case of Pasley vs. Freeman, 3 D. & E. 51. That is the first case to be found, where such an action has been brought. Judge Gross was of opinion, that an action in such a case, could not be maintained. Other eminent Judges have concurred with him. We all agree, however, that an action may be maintained within the limits of that case; but it is one not to be favoured, and certainly not to be extended. There must be fraud on one hand, and damage on the other; and they must, Judge Bulkr says, “be coupled with some dealing.” In the same case, Lord Kenyon says an action cannot be maintained for telling a lie, if no injury be occasioned by it ; but if it be attended with damage, it then becomes the subject of an action: “as calling a woman a whore, if she sustain no damage by it, is not actionable; but if she lose her marriage by it, then she may recover satisfaction in damages.” But suppose a daughter to lose her marriage, in consequence of such a slander *332 against the mother, could the daughter maintain an action ? I apprehend not: and yet the injury -t -¶ ^ , ¶, r , would be more immediate, than m the case now 1 before us. No case, I believe, can be found, where the principle has been extended beyond the person to whom the false representation was made. I think the verdict is contrary to law, and will conclude with the words of Judge Gross, “ if such an action will lie, there certainly has been, and will be, a plentiful source of litigation, of which the public are not hitherto aware.” A new trial must be granted.
Prioleau and Drayton, for the motion.
K. D. Simons, contra.
Bay and Colcock, J. concurred.
Johnson, J. dissented.
Cheves, J. gave no opinion, having been of counsel in the case.
Note. — For the opinions of the Judges, on the former motion, for a new trial, see Appendix.